UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
BRITTNEY NEAL                 :    Civ. No. 3:21CV00497(SALM)
                              :
v.                            :
                              :
SPECIALTY CABLE CORP.         :    February 14, 2022
                              :
------------------------------x
```

### RULING ON MOTION TO AMEND COMPLAINT [Doc. #50]

Plaintiff Brittney Neal ("plaintiff") has filed a motion for leave to amend her Complaint "to add additional facts based on information uncovered during discovery of this case." Doc. #50 at 1. Defendant Specialty Cable Corp. ("SCC") has filed a memorandum in opposition. See Doc. #54. For the reasons stated below, plaintiff's Motion for Leave to Amend the Complaint [**Doc. #50**] is **DENIED**.

I.  **Background**

Plaintiff filed this action against SCC in Connecticut Superior Court on March 17, 2021. See Doc. #1 at 6. Plaintiff alleges that she was employed by SCC beginning in June 2020, and that shortly after her hire she became a "Designated Supper Quality Representative ('DSQR')[,] certified to specifically inspect parts for General Electric, the Defendant's customer, to ensure the parts meet General Electric's specific quality requirements." Id. Plaintiff asserts that she noticed a

~ 1 ~

"significant amount of failed product" during her period of employment, which she reported to her supervisor, who "appeared upset and would attempt to find ways to send the product out to the customers regardless of the fact that it failed the quality tests." Id. at 7. "During Plaintiff's employment she raised concerns about the failed product that has been sent to customers and the safety issues that could cause and potential harm to the public." Id. (sic).

"Around the end of February 2021, Plaintiff was performing her duties as a DSQR when she attempted to obtain an original purchase order for the parts she was testing[,]" which she believed to be necessary to her work. Id. In response, plaintiff alleges that "her Manager asked Plaintiff to just compromise to with Plaintiff responded she cannot do that she is performing DSQR duties for GE and if she is not provided the original purchase order she will fo11ow the procedure she was trained on which would require her to contact GE directly." Id. (sic). "About a week later the Defendant terminated Plaintiff's employment on March 3, 2021." Id. at 8.

Plaintiff also alleges that she had inquired of the Human Resources office "why her time card appeared to always reflect her start time as exactly 7AM on the dot or 5AM on the dot[,]" when in fact she usually arrived a few minutes early. Id. On March 1, 2021, she alleges that she requested an accurate report

of her "actual time in punches." Id. She never received that report. See id.

Plaintiff brought her complaint in four counts.

Count One alleges wrongful termination in violation of Conn. Gen. Stat. §31-51q, alleging that plaintiff was wrongfully terminated after she exercised her free speech rights and "spoke out as a citizen on a matter of public concern when raising issues of safety and the sending of failed product to customers." Id.

Count Two alleges common law wrongful discharge, alleging that SCC "wrongfully discharged Plaintiff after Plaintiff complained internally regarding the Defendant's violations of quality management." Id. at 9.

Count Three alleges non-payment of wages under Conn. Gen. Stat. §31-58, et seq., §31-71a, et seq., and §31-76b, et seq., alleging that SCC "intentionally failed to pay the Plaintiff all of the wages in which she is entitled, and unlawfully and intentionally withheld the same." Id. at 10. This claim appears to be based on the "punch-in times" issue.

Count Four alleges retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. §215, et seq., alleging that SCC "retaliated against and terminated Plaintiff in response to her concerns regarding due, unpaid, and owed wages of the Fair Labor Standards Act." Id. at 11.

The original Complaint makes no mention of plaintiff raising concerns regarding COVID.

On April 9, 2021, SCC removed this matter to federal court. See generally Doc. #1. On May 19, 2021, SCC filed an Answer to the Complaint. See Doc. #18. SCC later was granted leave, absent objection, to file an Amended Answer, see Doc. #35, which it filed on August 23, 2021. See Doc. #36. The parties filed their Rule 26(f) Report of Parties' Planning Meeting on May 28, 2021. See Doc. #19. Judge Janet C. Hall[1] issued a scheduling order requiring, inter alia, that any motion to amend the complaint be filed no later than June 14, 2021. See Doc. #20 at 1.[2] The Order also provided that all discovery would be complete by December 3, 2021, and that any dispositive motions would be filed by January 21, 2022. See id. at 1, 2.

On December 9, 2021, after the close of discovery, plaintiff filed the instant motion to amend. See Doc. #50. SCC has filed an objection to the Motion to Amend. See Doc. #54. Plaintiff has filed no reply.

---

[1] This matter was transferred to the undersigned on October 13, 2021. See Doc. #41.

[2] The parties requested a deadline of May 28, 2021, for plaintiff to file motions to amend the Complaint. See Doc. #19 at 5. The Court set a more generous deadline.

## II. **Discussion**

Plaintiff describes her motion as seeking "to add additional facts[.]" Doc. #50 at 1. She asserts: "Plaintiff does not seek to add any additional cause of action." Id. Defendant responds that "[b]ecause federal pleading is notice pleading, not fact pleading, it is not necessary for Plaintiff to amend the Complaint to insert new factual allegations." Doc. #54 at 1 (citations and quotation marks omitted). The Court does not view plaintiff's proposed Amended Complaint as simply adding facts; rather, plaintiff seeks to introduce an entirely new theory of the case.

Plaintiff seeks to amend her complaint to include an allegation, in Count One, that she was terminated because she "spoke out as a citizen on a matter of public concern when raising issues with Defendant's failure to adhere to health department COVID-19 protocols." Doc. #50-2 at 5. Specifically, plaintiff alleges that on January 6, 2021, she learned that a co-worker had tested positive for COVID, but she and other co-workers were not notified. See id. at 2-3. She "confronted" a manager about the issue, and was dissatisfied with his response, so she "contacted the health department to report her concerns[.]" Id. at 3. "Plaintiff was then suspended later that day on January 6, 2021." Id.

Plaintiff asserts that this amendment should be permitted, in spite of the advanced stage of the proceedings, because of an email produced in discovery by SCC on December 3, 2021. See Doc. #50 at 1. "It is the Plaintiff's position that the context of this email suggests the Defendant was looking for a reason to terminate the Plaintiff and that the fact she contacted the DPH was a motivating factor." Id. at 2. Plaintiff contends that SCC "will not be prejudiced by the proposed amendment. In actuality it is the Plaintiff who was prejudiced by the late disclosure." Id. at 3. Plaintiff further states that she "intends on also seeking a modification of the scheduling order to allow additional time to complete discovery related to this newly disclosed email[.]" Id.

"Although Fed. R. Civ. P. 15(a) provides that leave to amend a complaint 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), it is within the sound discretion of the district court whether to grant or deny leave to amend." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). "The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay[.]" Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). Where the Court has set a deadline for any amendments, and has entered a scheduling order, the lenient standard of Rule 15(a) must be balanced against the requirement under Rule 16(b) that the

Court's scheduling order shall not be modified except upon a showing of good cause. See Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003); Fed. R. Civ. P. 15(a); Fed. R. Civ. P. 16(b).

"Leave to amend is routinely denied where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery." Chiaro v. Cty. of Nassau, 488 F. App'x 518, 518 (2d Cir. 2012) (citation and quotation marks omitted). The Court finds that amendment should be denied, on the bases of undue delay in proposing the amendment, and undue prejudice to defendant.

    1.   Undue Delay

SCC argues that plaintiff was aware of the essential facts -- that she had made a complaint to the health department and been suspended the same day -- when she brought suit, and chose not to include allegations about that incident in the Complaint. See Doc. #54 at 3. Plaintiff clearly knew that she had complained about COVID protocols, and had called the health department, and she clearly knew that she had been suspended the same day. Her own contemporaneous notes, submitted by defendant in opposition to the motion, indicate that she was told she was

being suspended because of an incident that had occurred on November 25, 2020, but that even then she thought it might be connected to her COVID concerns: "I feel its because I expressed how I felt about the positive cases and how [they] don't have a protocol in place. I called Wallingford Health Dept. this day as well." Doc. #54-6 at 2 (sic). This note confirms that in <u>January 2021</u>, plaintiff already had suspicions that she had been disciplined for speaking out about COVID.

    Plaintiff's deposition testimony[3] confirms that she not only had knowledge of the relevant facts, but of the potential to allege that her COVID complaints played a role in her termination. Plaintiff testified at her deposition that she "was suspended in January for opening [her] mouth about COVID and reporting them to Wallingford Health Department." Doc. #54-3 at 6. She further testified: "Pertaining to their firing me because I reported them to the Health Department, and I opened my mouth about the COVID multiple times, which caused a disruption in the workplace because everybody else started to feel the same way." <u>Id.</u> at 9. There is no reason that plaintiff could not have included these allegations in her original Complaint. Her delay until almost a full year after the events in question, and some six months after the deadline set by the Court, is unreasonable

---

[3] Plaintiff was deposed on November 29, 2021, <u>before</u> the email was disclosed in discovery. <u>See</u> Doc. #54-3 at 2.

and unnecessary. See, e.g., John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994) (affirming denial of motion to amend where amendment was filed "more than four months" after the deadline set by the court).

    Plaintiff asserts that the email "supports an inference that Plaintiff's reporting was a motivating factor in her termination." Doc. #50 at 3. Even if this is true -- which is by no means certain -- it adds little to the information plaintiff already possessed. Plaintiff argues that the email "clearly outlines that the Defendant is aware Plaintiff contacted the department of public health (DPH) and that she considers Plaintiff a liability." Doc. #50 at 2. But management was aware of plaintiff having complained about COVID compliance on January 6, 2021, when she made the complaints to management, and plaintiff testified at her deposition that she told management she was going to call the health department before she made the call. See Doc. #54-3 at 6-8. The email therefore adds nothing to the question of defendant's knowledge, according to plaintiff's testimony. As to the idea that the email made plaintiff aware that management considered her "a liability[,]" Doc. #50 at 2, given that plaintiff was at least purportedly being disciplined for an incident dating to November 2020, defendant clearly already had concerns about plaintiff, apart from and predating her raising concerns about COVID compliance.

In sum, the Court finds that the disclosure of the email at the close of discovery is insufficient to justify an amendment to the Complaint at this late date.

2.  Undue Prejudice

In determining whether a defendant will suffer "undue prejudice" as a result of an amendment, the Court considers "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).[4]

The Court finds that the proposed amendments would unduly prejudice defendant.

The factual allegations that plaintiff seeks to include are unrelated to those in her original Complaint. "Normally, an amendment based on factual circumstances not raised by the original complaint would prejudice [defendant] if it required additional discovery after the discovery period had closed, delaying summary judgment and a possible trial date." Frenkel v.

---

[4] The Court notes that plaintiff has asserted: "If this Court were to deny Plaintiff's request to amend the Plaintiff would be able to file a separate suit in Connecticut Superior Court under these newly discovered facts[.]" Doc. #50 at 3. Accordingly, the third factor identified in Block does not support permitting amendment.

New York City Off-Track Betting Corp., 611 F. Supp. 2d 391, 398 n.10 (S.D.N.Y. 2009), opinion adopted, 701 F. Supp. 2d 544 (S.D.N.Y. 2010); see also Amusement Indus., Inc. v. Stern, No. 07CV11586(LAK), 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 11, 2014) ("'[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.'" (quoting 6 Wright, Miller & Kane Fed. Prac. & Proc. Civ. §1487 (3d ed. 2014))).

Here, although plaintiff does not assert a new cause of action, her original Complaint is devoid of any assertion that she was fired for complaining about COVID protocols. This sharp shift in the theory supporting her claims -- raised only after the close of discovery -- "would require the parties to begin anew with discovery, both documentary and testimonial," as to the COVID issues. Tindal v. Goord, No. 04CV06312(DGL), 2006 WL 2990460, at *3 (W.D.N.Y. Oct. 19, 2006). The additional delay and expenditure of resources would prejudice defendant.

Indeed, discovery closed in this matter six days before plaintiff filed her motion to amend, and plaintiff asserts that she will need to reopen discovery if amendment is permitted. See Doc. #50 at 3. "Moving to amend pleadings after the close of discovery may constitute an inordinate delay even if certain

testimony adduced during discovery purportedly gives the opposing party full and fair notice of a new theory not alleged in the operative complaint." Braham v. Perelmuter, No. 3:15CV01094(JCH), 2016 WL 6910256, at *4 (D. Conn. Nov. 23, 2016) (citation and quotation marks omitted); Cramer v. Fedco Auto. Components Co., No. 01CV00757(JTE), 2004 WL 1574691 at *2 (W.D.N.Y. May 26, 2004) ("[A]n amendment is considered to be highly prejudicial if discovery has already been completed.").

Finally, as noted, plaintiff was aware of the facts supporting her COVID-related theory well before she filed her motion for leave to amend, and, in fact, before she filed this action. See Doc. #54-6 at 2; Doc. #54-3 at 6.

In sum, where, as here, plaintiff knew the facts underlying her claim for nearly a year, but waited until after the close of discovery to set forth her new theory, good cause does not exist to permit plaintiff's belated amendment. See Kennedy v. Caruso, No. 3:19CV00260(VLB), 2020 WL 4605222, at *1 (D. Conn. Aug. 11, 2020) ("These new allegations would require additional discovery, including depositions, and possibly additional motions for summary judgment. Therefore, the Court finds that allowing the amended complaint would unduly prejudice Defendants."); S. New England Tel. Co. v. Glob. NAPS, Inc., No. 3:04CV02075(JCH), 2007 WL 521162, at *4 (D. Conn. Feb. 14, 2007) ("Late amendments to assert new theories are not reviewed

favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." (citation and quotation marks omitted)); Lau v. Merriam Motors, Inc., No. 3:04CV00971(MRK), 2006 WL 1328785, at *1 (D. Conn. Feb. 22, 2006) ("Having known the facts underlying his claim for years and having been fully aware of the schedule, Plaintiff nonetheless unduly delayed asserting the claim until the extended discovery was essentially complete. Accordingly, the Court finds that Plaintiff has not shown good cause for permitting such a late amendment.").

### III. Conclusion

For the reasons stated, plaintiff's Motion for Leave to Amend the Complaint [**Doc. #50**] is **DENIED**.

It is so ordered this 14th day of February, 2022, at New Haven, Connecticut.

                                        /s/
                            HON. SARAH A. L. MERRIAM
                            UNITED STATES DISTRICT JUDGE